STATE OF NEBRASKA, APPELLEE, V. ALLEN R. KUIL, APPELLANT.

434 N.W.2d 700

Filed January 27, 1989.   No. 88-251.

Gary L. Erlewine for appellant.

Robert M. Spire, Attorney General, and William L. Howland for appellee.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and CARLSON, D.J.

BOSLAUGH, J.

The defendant, Allen R. Kuil, was convicted of driving while under the influence of alcoholic liquor, refusal to submit to a chemical test under the implied consent law, and third degree assault upon a police officer. On the first count he was sentenced to 7 days in jail and fined $200, and his license was suspended for 6 months. On the second count he was sentenced to 7 days in jail and fined $200, and his license was suspended for 6 months. On the assault count he was sentenced to 6 months in jail with credit for 14 days' presentence incarceration. All sentences run concurrently.

The defendant has appealed and contends that the trial court erred in overruling his motion to suppress and that he was denied effective assistance of counsel.

There was evidence from which the jury could find that on

August 30, 1987, at about 10:15 p.m., Officer Bolton of the Schuyler Police Department saw a red Ford pickup operated by the defendant, traveling westerly on 11th Street, fail to stop at the stop sign at the intersection of 11th and Highway 15. The pickup proceeded into the intersection approximately two car lengths, into the second lane for northbound traffic, finally stopping just prior to crossing the highway's centerline. Bolton radioed Officer Louden of the Schuyler police force, gave him a description of the pickup, and asked Louden to follow what Bolton considered to be "probably a drunk driver." Louden then followed the red pickup west on 11th Street and saw it enter a dead end area at 11th and Gold Streets. Louden believed the pickup was exceeding the speed limit but was unable to obtain a radar reading. After the pickup had entered a graveled area of the dead end street, it veered off to the left side of the road and spun around, causing the pickup to fishtail and throw dust and gravel from its rear tires. Louden then radioed Bolton and asked him to stop the pickup and hold it until Louden arrived.

After the pickup had been stopped, Louden asked the defendant to produce his driver's license. The defendant also produced his insurance and registration cards, and Louden noticed that the insurance card had expired. When Louden told the defendant that the insurance card had expired, the defendant became upset and began shouting profanities at the officers. Louden noticed an odor of alcohol about the defendant and that the defendant's gait was unsteady—"swaying and staggering." Louden then radioed for assistance from Assistant Chief Rima. Upon Rima's arrival, the officers administered field sobriety tests to the defendant, during which the defendant became verbally abusive. The defendant's performance of the tests was unsatisfactory, and the defendant was asked to submit to a preliminary breath test, which the defendant failed. Louden then placed the defendant under arrest and handcuffed him. When the officers attempted to place the defendant in the police cruiser, he resisted and had to be forcibly placed in the cruiser. After he had been placed in the cruiser, the defendant was told that he was under arrest and the implied consent form was read to him. The defendant again

became verbally abusive. When asked to submit to a blood or urine test, the defendant refused. Assistant Chief Rima then instructed Louden to take the defendant to the jail.

At the courthouse the defendant resisted efforts to book him and place him in a cell. At one point, the defendant grabbed the groin area of one of the officers and was subdued only after being struck with a baton and placed in a choke hold. In addition to bruises, Officer Louden received a laceration inside his lower right eyelid, which became infected.

The defendant's motion to suppress was based upon a claim that the investigatory stop was unlawful.

A police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. *State v. Beerbohm*, 229 Neb. 439, 427 N.W.2d 75 (1988); *State v. Dail*, 228 Neb. 653, 424 N.W.2d 99 (1988). In *State v. Kavanaugh*, 230 Neb. 889, 434 N.W.2d 36 (1989), we stated that police officers must have a particularized and objective basis for suspecting the person stopped of criminal activity. The assessment of the totality of circumstances includes all of the objective observations and considerations, as well as the suspicion drawn by a trained and experienced police officer by inference and deduction that the individual stopped is, has been, or is about to be engaged in criminal behavior. See, also, *State v. Beerbohm, supra*; *State v. Thomte*, 226 Neb. 659, 413 N.W.2d 916 (1987); *State v. Pierce and Wells*, 215 Neb. 512, 340 N.W.2d 122 (1983).

In *State v. Daniels*, 220 Neb. 480, 370 N.W.2d 179 (1985), the defendant was convicted of driving while intoxicated and resisting arrest. A police officer had observed the defendant's car run a stop sign and then negotiate a "wide angle turn." The officer followed the defendant's car for about 1 1/2 miles, during which time the car was seen to drive " 'to the right, enough to take up the dirt along the shoulder of the road and then curved left to the center and to the right again.' " *Id.* at 481, 370 N.W.2d at 180-81. The officer then stopped the defendant's car and, upon approach of the defendant, noticed an odor of alcohol about the defendant's person. On appeal, the defendant argued that the police did not have probable cause to stop his

vehicle. We held that "there is evidence that the driving of appellant was erratic and that a stop sign was ignored. Therefore, the marshal had 'a particularized and objective basis for suspecting the person stopped of criminal activity.' " *Id*. at 482, 370 N.W.2d at 181. See, also, *State v. Holman*, 221 Neb. 730, 380 N.W.2d 304 (1986); *State v. Jefferson*, 196 Neb. 340, 242 N.W.2d 881 (1976).

The facts in this case justified the investigative stop by the officers. Officer Bolton observed the defendant fail to stop at the stop sign at Highway 15, and Officer Louden saw the defendant drive into the dead end area, where he spun his truck around, kicking up dust and gravel and causing the truck to fishtail. The first assignment is without merit.

The second assignment of error relates to alleged ineffectiveness of counsel before and during trial and on the defendant's amended motion for new trial.

Officer Louden had a tape recorder in his pocket which recorded the conversation from the time the defendant's car was stopped until after the defendant had been placed in the police cruiser. The tape recording was received in evidence without objection.

The defendant argues that trial counsel should have filed a discovery motion which would have disclosed the existence of the tape before trial and, thus, have allowed the defendant to meet that evidence. He also contends that counsel erred in failing to object to the introduction of the tape and in failing to request a continuance in order to review the tape, which the defendant considers was highly prejudicial.

To sustain a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Jackson*, 226 Neb. 857, 415 N.W.2d 465 (1987); *State v. Costanzo*, 227 Neb. 616, 419 N.W.2d 156 (1988).

The record fails to establish the factors required under *Strickland*. The information recorded on the tape was no different than any information disclosed by the testimony of the police officers at the trial. The tape recording was merely

cumulative to the testimony of the officers. In addition thereto, the defendant has failed to suggest any way in which he could have "met" that evidence. An accurate account of what really happened could hardly be unfairly prejudicial to the defendant.

With respect to the amended motion for new trial, there is no showing as to how an affidavit would have enabled the defendant to avoid the effect of the tape recording.

The judgment is affirmed.

AFFIRMED.