STATE OF NEBRASKA, APPELLEE, V. WILLIAM J. BROWN, APPELLANT.

439 N.W.2d 792

Filed May 19, 1989.    No. 88-721.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Robert M. Spire, Attorney General, and Donald E. Hyde for appellee.

HASTINGS, C.J., SHANAHAN, and FAHRNBRUCH, JJ., and NORTON, D.J., and RONIN, D.J., Retired.

NORTON, D.J.

The defendant, William J. Brown, was convicted by a jury of the crime of possession of a firearm by a felon, and was sentenced to a term of imprisonment in the Nebraska Penal and Correctional Complex. He appeals to this court, alleging error on the part of the trial court in overruling his motion to suppress evidence obtained at the time of an investigatory stop. We affirm.

At approximately 2 a.m. on May 2, 1988, Officer Robert Vondrasek II of the Omaha Police Division was sitting in his police cruiser, which was parked at the intersection of 30th and Evans Streets in Omaha. At that time, he heard a number of shots being fired from a direction south of the location where he was parked. Officer Vondrasek had been employed by the Omaha Police Division for about 4 1/2 years at that time and was familiar with the sound caused by the firing of handguns and rifles. He later testified that these shots (between 8 and 15) sounded like pistol fire. He believed the shots were being fired in the area of 30th and Bedford Streets, which was approximately four blocks from his parked position. He proceeded to that area, arriving there between 15 and 30 seconds later.

Upon arrival, Officer Vondrasek observed, on the east side of 30th Street, three cars parked in a parking lot. Two of the cars appeared to be unoccupied. The third, a white Volkswagen Dasher, was occupied by two persons seated in the front seats, and a third person was entering the back seat. As Vondrasek approached the Volkswagen, it began to move. When Vondrasek's cruiser reached a point 20 to 30 feet west of the

Volkswagen, it stopped. Vondrasek observed no other persons or activity in the area at that time. He ordered the occupants of the Volkswagen to put their hands in sight, at which time they complied and got out of the car. He observed the defendant to be the driver. He exited his cruiser and pointed his revolver at the three individuals. Shortly thereafter, other police officers arrived, and together with Vondrasek they conducted a pat-down search of the three individuals for weapons. None were found. At this time Vondrasek looked into the Volkswagen with his flashlight for the purpose of locating possible weapons. It was then his belief that the occupants of this car were involved in the firing of the shots which he had heard. Lying in plain view on the floor of the back seat, he saw a cylinder for a .22-caliber revolver, which appeared to have rounds in it, and also saw what was later determined to be 15 rounds of live .22-caliber ammunition. At that time the party who had occupied the back seat was handcuffed, and while continuing to detain the other two, Vondrasek, together with Officer Petersen, one of the other officers at the scene, began a search of the vehicle, starting at the passenger-side rear door. Eventually, two loaded .32-caliber revolvers were discovered, one under the driver's seat and one under the front passenger's seat, together with the rest of the .22-caliber revolver which was discovered in the rear passenger area. Subsequently, the defendant was arrested.

At the time of the hearing on the motion to suppress, Officer Vondrasek also testified that there were numerous businesses located in the area of 30th and Bedford but that none were open at that time of the morning; that as he approached the stop area on 30th Street, he saw no other cars leaving in any direction; that he believed that the .22-caliber cylinder that he saw lying on the floor of the Volkswagen was involved in the gunshots that he had heard; and that at the time of the stop and search, he believed the occupants of the Volkswagen to be potentially dangerous.

The district court overruled the defendant's motion to suppress the evidence seized at the time of the stop, finding the search to have been conducted with sufficient probable cause "to believe that the defendant had committed or was committing a criminal offense" and, further, that the search of

the automobile was the result of a lawful stop. At the trial, the defendant's objection to the admission of the evidence obtained as a result of the investigatory stop and subsequent search was properly preserved for this appeal.

In determining the correctness of the trial court's ruling on a motion to suppress, the Supreme Court will uphold a trial court's findings of fact unless those findings are clearly wrong. *State v. Holman*, 229 Neb. 57, 424 N.W.2d 627 (1988). A police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. *State v. Kuil*, 231 Neb. 62, 434 N.W.2d 700 (1989). Police officers must have a particularized and objective basis for suspecting the person stopped of criminal activity. The assessment of the totality of circumstances includes all of the objective observations and considerations, as well as the suspicion drawn by a trained and experienced police officer by inference and deduction that the individual stopped is, has been, or is about to be engaged in criminal behavior. *State v. Kuil, supra*. Three requirements must be satisfied to uphold a warrantless search and seizure from an automobile under the plain view doctrine. First, the police officer must lawfully make an "initial intrusion" or otherwise properly be in a position from which he can view a particular area. Second, the officer must discover the incriminating evidence "inadvertently," i.e., he may not know in advance the location of the evidence and intend to seize it without obtaining a warrant, relying on the plain view exception only as a pretext. Finally, it must be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure. *State v. Hansen*, 221 Neb. 103, 375 N.W.2d 605 (1985).

Considering all of the evidence produced at the hearing on the motion to suppress, it cannot be said that the trial court's findings of fact and conclusions reached therefrom are clearly wrong in this case. The incident which precipitated the stop, detention, search, and subsequent arrest occurred in the early morning hours. The officer involved was an experienced officer with the Omaha police force and was familiar with the sound of

pistol fire. He arrived at the place from where he believed the gunshots to have originated less than 1 minute after hearing the same. The area was deserted except for three automobiles in a parking lot, two of which were not occupied. The third contained three individuals, one of whom was entering the back seat of the automobile as the officer approached in his cruiser. There were no other persons in the area; no other discernible activity was occurring in that place at that time; and as the officer approached, he did not see any other vehicles leaving in any direction. On the basis of the facts as then known to him, his observations, and the reasonable inferences and deductions which he could make from the same, Officer Vondrasek could be said to have had a particularized and objective basis for suspecting that criminal activity was, had been, or was about to be engaged in by the three individuals he was then approaching, and therefore had the right to stop and detain them for a period of time sufficient to verify or dispel his suspicions. The defendant appears to complain about the appropriateness of the detention. The suspicion of the use of firearms in the early morning hours in a deserted area with no rational explanation certainly justifies the use of caution in the approach. One cannot say that the methods utilized for the stop and detention were inappropriate in this case.

Having therefore made a lawful "initial intrusion," Officer Vondrasek's subsequent discovery of the .22-caliber cylinder was inadvertent, it being in plain view on the rear floor of the automobile and easily discernible when looking into the same. Finally, there can be no doubt that upon discovery of the same, it became immediately apparent to Officer Vondrasek that this .22-caliber cylinder might be evidence of a crime. It therefore follows that a valid warrantless search occurred, and all relevant evidence discovered during that search was then admissible in the subsequent trial of the defendant.

Accordingly, there being no error on the part of the district court in overruling the defendant's motion to suppress, the decision is affirmed.

AFFIRMED.