STATE OF NEBRASKA, APPELLEE, V. CLIFTON L. POPE, APPELLANT.

480 N.W.2d 169

Filed February 14, 1992.    No. 90-889.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Don Stenberg, Attorney General, and Jim Elworth for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Defendant, Clifton L. Pope, was convicted by the district court, sitting without a jury, of unlawful possession of a controlled substance. He was sentenced to 20 months' to 5 years' imprisonment, with credit given for time served. Defendant timely appealed, assigning a single error: The "District Court erred in overruling the Defendant's motion to suppress the fruits of the stop and subsequent arrest of the Defendant." A timely objection was made at trial to the admission into evidence of the "fruits of the illegal stop." We affirm.

The record shows the following: At 10:14 p.m. on December

8, 1989, two police officers on routine patrol saw a parked car, "partially out in the westbound traffic lane on Taylor Street," obstructing the flow of traffic west of 24th Street in Omaha. At the time, "there was a lot of traffic flow on Taylor Street." The area was described as "a high drug traffic area." The car was parked "two, two and a half feet" from the curb, and "[t]he flow of traffic was having difficulty due to this vehicle." Two men were seated in it. Defendant was in the front passenger seat. The officers saw the two men get out of the car and hurriedly walk away.

The officers parked their cruiser and walked toward the car, intending to "advise the parties to either pull the vehicle out from the position or just go ahead and pull it over to the side of the roadway so the traffic could flow." As the officers walked past the car, they saw that it was unlocked and that the keys were in the ignition. They testified that that was unusual for such a high crime area, frequented by pedestrians.

The officers caught up with the two men approximately 20 feet away from the car. The officers asked the two to move the car, but they replied that it was not their car and that it belonged to a woman in a nearby bar. The men stated they did not know the woman's name, only her nickname.

This first contact between the police and defendant was proper. The police were addressing an obvious traffic problem and sought to clear the way for traffic by having the car moved. When defendant and his companion said that they did not own the car and that they did not know the name of the owner, the police were then faced with a different problem. Defendant had just left a car that neither he nor his companion owned, and they did not know the name of the owner. The police knew that keys were in the ignition of the car and that the location was a high crime area. At this point, the police knew objective facts constituting reasonable cause for a "stop and frisk." See *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The police conducted a pat-down search. Defendant cannot successfully contend the pat-down search was illegal.

The pat-down search of defendant and the other man disclosed no weapons. While one officer was checking the two men's identification, the other went to look for registration

papers in the car. About this time, two more officers joined the officers already at the scene. Two officers looked through the window and immediately saw that the glove compartment was open and that several packages of cellophane and numerous burnt matches were on top of the open glove compartment door. The officers had much training and experience in drug enforcement, and they testified the facts before them made them suspect that someone had been consuming crack cocaine in the car.

After observing the cellophane and the matches, one officer approached defendant and questioned him. At this point, defendant was, in effect, seized. The officer testified that defendant was not "free to go." The stop had developed into an investigation.

We have held:

> The test to determine whether an investigative stop is justified is whether the police officer has a reasonable suspicion based on articulable facts which indicate that a crime has occurred, is occurring, or is about to occur and that the suspect may be involved. . . . In determining what cause is sufficient to authorize police to stop a person, the totality of the circumstances must be taken into account. . . . The assessment of the totality of the circumstances includes all of the objective observations and considerations, as well as the suspicion drawn by a trained and experienced police officer by inference and deduction that the individual stopped is, has been, or is about to be engaged in criminal behavior.

*State v. Pillard*, 235 Neb. 642, 646, 456 N.W.2d 755, 758 (1990).

In this case, experienced officers had properly looked inside the car in an effort to determine the ownership of the car and saw physical items in plain view. Those items indicated that illegal drugs had been consumed in the car. The items were positioned directly in front of the seat in the car that the officers knew defendant had just left. The information could be used by the officers because it was obtained pursuant to the "plain view" doctrine. The officers lawfully made their initial intrusion into the car; the incriminating evidence was discovered inadvertently; and it was immediately apparent to

the trained officers that the items they saw could be evidence of a crime. See *State v. Brown*, 232 Neb. 224, 439 N.W.2d 792 (1989). The investigative stop was fully justified and was legally proper.

One of the officers asked defendant if defendant had any drugs on his person and if he had used any drugs that evening. Defendant replied negatively to both questions. The officer then asked defendant if the officer could search him for controlled substances. Defendant told the officer to go ahead. The officer asked defendant to turn around and unbutton his overcoat. Defendant did so and opened the coat.

The officer reached into defendant's overcoat and found a cellophane wrapper in the left inside breast pocket. The wrapper contained a substance that was later determined to be a large rock of crack cocaine. The officer then formally placed defendant under arrest and field tested the substance. Defendant accused the officer of planting the cocaine in his pocket and denied that the cocaine belonged to him.

The officers transported defendant to the police station, where they strip searched and interrogated him. Defendant was advised of his rights under *Miranda*, and an officer recorded defendant's responses stating that he understood his rights. Defendant then made a statement, in which he admitted that he had given consent to the search and had voluntarily opened his coat. The interview concluded about 11:25 p.m.

When reviewing the correctness of a trial court's ruling on a motion to suppress, an appellate court will not reweigh the evidence or resolve conflicts in the evidence, but will uphold the trial court's findings of fact inherent in the court's ruling unless these facts are clearly erroneous. See, *State v. Melton, ante* p. 790, 478 N.W.2d 341 (1992); *State v. Bowen*, 232 Neb. 725, 442 N.W.2d 209 (1989). In determining whether a trial court's findings on a motion to suppress are clearly erroneous, an appellate court does not reweigh evidence or resolve conflicts therein, but takes into consideration that the trial court has observed the witnesses testifying in regard to the motion to suppress. *State v. Melton, supra*.

Neither a warrant nor probable cause is required for a consensual search, but the State must prove that the consent

was freely and voluntarily given. See *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). Pursuant to the 4th and 14th amendments to the U.S. Constitution and article I, § 7, of the Nebraska Constitution, a citizen has a right to be free from an unreasonable search and seizure. "[I]f police [have] acted without a search warrant, the State has the burden of proof that the search was conducted under circumstances substantiating the reasonableness of such search or seizure." *State v. Vrtiska*, 225 Neb. 454, 461, 406 N.W.2d 114, 120 (1987).

We discussed the requirements of voluntary consent in *State v. Prahin*, 235 Neb. 409, 455 N.W.2d 554 (1990), where defendant had been stopped for speeding. Prahin objected to a subsequent search, on the basis that although he gave consent, his consent was not voluntary. Prahin argued that he was in custody at the time he gave his consent to the search, and, therefore, his consent was involuntary. Pope was in custody in this case. In *Prahin*, we held, "Although the fact that an individual is in police custody is an important consideration in determining the voluntariness of the consent to search [citation omitted], such factor, standing alone, does not invalidate the consent to search as long as the consent was otherwise voluntarily given." *State v. Prahin, supra* at 416, 455 N.W.2d at 560.

In this case, defendant was in custody when he gave his consent, because at that point he was not free to leave. There is no evidence, however, that the officer coerced, threatened, or made promises to the defendant. Defendant not only consented, but admitted in his statement that he opened his coat for the officer. Defendant's consent to the search of his person, in this case, was voluntarily given. We hold that the evidence fully supports the trial court's order denying defendant's motions to suppress both his statements and the physical evidence obtained from his person and the trial court's overruling defendant's objections to their admission at trial. Defendant's assignment of error is without merit.

AFFIRMED.