STATE OF NEBRASKA, APPELLEE, V. TIMOTHY A. FRIEZE,
APPELLANT.

525 N.W.2d 646

Filed December 20, 1994.   No. A-94-180.

Thomas M. Kenney, Douglas County Public Defender, and Kelly S. Breen for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

CONNOLLY, IRWIN, and MILLER-LERMAN, Judges.

MILLER-LERMAN, Judge.

Timothy A. Frieze appeals his convictions for possession of burglar's tools and possession of a short shotgun. Because we find that Frieze's motion to suppress was properly denied and that the evidence is sufficient to sustain the convictions, we affirm.

## FACTS

On July 19, 1993, at approximately 1 a.m., Officer Steven Rasgorshek of the Ralston Police Department was in his cruiser in the westbound lane of Harrison Street near the intersection of 78th Street in Douglas County, Nebraska. The centerline of Harrison Street is the boundary line between the city of Ralston in Douglas County and the city of La Vista in Sarpy County, Nebraska, with Sarpy County to the south and Douglas County to the north of the centerline.

Officer Rasgorshek observed a brown Ford pickup truck with an Iowa personalized plate reading "HOLTZY" proceeding southbound on 78th Street. The truck turned left from 78th Street onto eastbound Harrison Street, where, according to Officer Rasgorshek, the vehicle crossed back and forth over the double yellow centerlines. Officer Rasgorshek testified that, as the vehicle crossed the centerlines on Harrison Street, the vehicle violated traffic laws in Ralston to the north of the "double yellows" and Sarpy County to the south of the centerlines. According to the testimony, the truck had turned onto Harrison Street in front of the officer and was coming toward him for a time. Officer Rasgorshek turned around and followed the truck east on Harrison Street and then north on 72d Street in Omaha, Nebraska, for about a mile. As he followed the truck north on 72d Street, Officer Rasgorshek saw the truck weaving within its lane of travel and "crossing over the lane change, from lane one to lane two."

According to Officer Rasgorshek's testimony at the suppression hearing, he stopped the truck at 72d and Q Streets for "crossing over the line" and suspicion of drunk driving. Officer Rasgorshek testified specifically that his "initial reason for stopping was the fact that the vehicle was crossing the double yellow lines at Harrison Street and approximately 78th." Officer Rasgorshek stated he initially observed only the driver, Michael Holtz, in the truck. Officer Rasgorshek testified that the truck was raised high up with a "lift kit," and he could not see into the bed of the truck. For officer safety, Officer Rasgorshek called to Holtz to come back to the patrol car and bring his driver's license, registration, and proof of insurance. Holtz got out and told Officer Rasgorshek that he did not have

any of the requested documentation. About that time, Officer Robert Osterman, of the Ralston Police Department, arrived.

As Officer Osterman arrived, Officer Rasgorshek thought he saw a head peek up from the bed of the truck. He asked Holtz if anyone else was in the truck, and Holtz told him that his friend Tim was in the truck with him. To determine if this friend was in the cab of the truck or in its bed, Officer Rasgorshek directed Holtz to have his friend come back to the officers' location. Timothy Frieze, the defendant in this case, came back. Frieze had been a passenger in the cab of the pickup. Holtz was then asked if there was anyone else in the truck, and he said no. Officer Osterman walked up to the truck and observed two people in the bed of the truck. Officer Osterman directed these additional occupants to get out of the truck, and both Frieze and Holtz were placed face down on the ground while the others were brought over. They were also placed face down on the ground, and all of them were placed in restraints.

Officer Osterman then asked Holtz for permission to search the truck, and, according to Officer Osterman, Holtz granted permission. Holtz, the owner of the truck, testified at the suppression hearing that he did not give permission for the search of his truck and that he and the officers argued about it for 5 or 10 minutes. Officer Osterman searched the truck while Officer Rasgorshek stood guard over the four individuals on the ground.

In the cab of the truck, police found latex gloves, two pairs of work gloves, two black sweat shirts, several handtools (screwdrivers, wrenches, etc.), and a hacksaw. One 12 gauge shotgun shell was found in the glove compartment of the truck. A Mossberg 12 gauge short shotgun was found in the bed of the pickup truck. All four occupants were booked on possession of burglar's tools, possession of a short shotgun, and conspiracy. Additional charges were brought against certain of the other occupants of the pickup. Charges against the other occupants of the truck are not a subject of this appeal. Following his arrest, Frieze was taken to the Douglas County sheriff's office, where he was questioned and a statement was taken.

Prior to trial, Frieze moved to suppress all evidence arising

from the stop of the vehicle, including the tools and shotgun and a statement he apparently gave the officers at the scene to the effect that Holtz had come to pick Frieze up at the house of Frieze's girl friend. The trial court overruled Frieze's motion to suppress, and a bench trial was held thereafter. The parties stipulated to most of the facts, including the contents of the testimony of an expert who, if called by the State, would testify that the objects found during the search of the truck are associated with burglary. Prior to trial, the State advised the court that it would not use Frieze's statement in its case in chief. During the trial, Frieze objected to the admission of the evidence which had been the subject of his motion to suppress. His objections were overruled.

Frieze testified at trial and stated that he was in the truck to help protect his friend, Holtz. Frieze stated that Holtz had asked him to accompany him to Omaha to pick up the son of Holtz' girl friend because Holtz had been "jumped" in Omaha the previous day. Frieze testified that he did not know what street they had been on, but that they had pulled into an apartment complex, Holtz had honked the horn, and two "kids" had come out and jumped into the back of the truck. Frieze testified that he did not see either of the kids carry anything into the truck and did not notice any wrenches, hacksaws, or pliers in the truck. Frieze testified that he knew Holtz and that it would not have been unusual for Holtz to carry tools with him because of his occupation as a construction worker. On cross-examination, Frieze testified that he had previously told the officers at the scene that he was visiting his girl friend named "Becky" and that Holtz had come to pick him up and take him back to Council Bluffs, Iowa.

The trial court found both of Frieze's stories "preposterous" and convicted him of both counts in the information. Frieze was sentenced to concurrent terms of not less than 14 months' nor more than 3 years' imprisonment on both counts, with credit for time served. This appeal followed.

## ASSIGNMENTS OF ERROR

On appeal, Frieze claims that his motion to suppress was improperly denied and that the evidence at trial lacked the

probative force required to support the convictions.

## ANALYSIS

*Motion to Suppress.*

Prior to trial, Frieze filed a motion to suppress, seeking to exclude, inter alia, the items found in the search of the pickup and his statement made to the officers as to his whereabouts earlier on the evening of July 19, 1993. Under *State v. Harms*, 233 Neb. 882, 449 N.W.2d 1 (1989), we conclude that Frieze, as an occupant in Holtz' pickup, has standing to challenge the stop of the vehicle.

In determining the correctness of a trial court's ruling on a motion to suppress, this court will uphold a trial court's findings of fact unless those findings are clearly erroneous. *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994); *State v. Hicks*, 241 Neb. 357, 488 N.W.2d 359 (1992); *State v. Thomas*, 240 Neb. 545, 483 N.W.2d 527 (1992); *State v. Pope*, 239 Neb. 1009, 480 N.W.2d 169 (1992); *State v. Masat*, 239 Neb. 849, 479 N.W.2d 131 (1992); *State v. Coleman*, 239 Neb. 800, 478 N.W.2d 349 (1992). In deciding whether the trial court's findings on a motion to suppress are clearly erroneous, the reviewing court recognizes the trial court as the trier of fact and takes into consideration that the trial court has observed the witnesses testifying regarding the motion. *State v. Pope, supra*; *State v. Melton*, 239 Neb. 790, 478 N.W.2d 341 (1992).

Frieze argues that Ralston police officer Rasgorshek's stop of the pickup in Omaha was improper because the stop was outside Officer Rasgorshek's jurisdiction. Frieze relies on *State v. Tingle*, 239 Neb. 558, 477 N.W.2d 544 (1991), which states that a police officer lacks authority to pursue or arrest a suspected misdemeanant outside the officer's geographical jurisdiction, absent express statutory authorization. Frieze argues that because the stop was improper, the fruits of the stop should be suppressed. See, U.S. Const. amend. IV; Neb. Const. art. I, § 7; *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). In response, the State argues that statutory authority exists for the stop, that the stop was proper, and that the evidence uncovered following the stop should not be excluded. We agree with the State.

Neb. Rev. Stat. § 18-1706 (Reissue 1991), headed "Fire, police, and emergency service; provision outside limits of municipality," provides: "Any city or village may by resolution authorize its fire or police departments or any portion thereof to provide fire, police, and emergency service outside of the limits of the municipality either within or without the state."

A review of the record shows that Ralston resolution No. 9202 (1992) (Resolution) was received in evidence. The Resolution provides in part:

> WHEREAS, State of Nebraska Revised Statutes 18-1706 provides that any city or village may by resolution authorize its police department to provide service outside of the limits of the municipality, and the Mayor and City Council have determined that it is in the best interests of the City and its inhabitants to invoke and use such statutory authority.
>
> NOW, THEREFORE, BE IT RESOLVED, that the Mayor and City Council do hereby authorize Ralston Police Personnel to extend and to provide police service outside of the corporate limits of the City of Ralston in the following situations: (1) Upon the request for assistance by another law enforcement agency designated by the Mayor and City Council as an approved mutual aid agency; and/or (2) police personnel having gone outside the corporate limits in pursuit of a person for purposes of apprehensions, arrest, ticketing or other official action in cases where such person was observed violating a law of the State or ordinance of the City within the City of Ralston's corporate limits.

Reading § 18-1706 and the Resolution together, we conclude that specific statutory authority permitted Ralston police officer Rasgorshek to pursue the Holtz pickup into Omaha. Compare *State v. Tingle, supra.* In so concluding, we observe that the path of the Holtz pickup when followed by Officer Rasgorshek was generally along the boundary between Ralston and La Vista and between Ralston and Omaha. We further observe that the "pursuit" in the instant case was consistent with the context and plain language of the Resolution.

Officer Rasgorshek testified that he observed Holtz' pickup

cross the double yellow centerlines while it proceeded eastbound on Harrison Street. Officer Rasgorshek's suppression hearing testimony, stipulated to at trial, was clear that the pickup crossed the centerlines on Harrison Street and approximately 78th. At this point, the vehicle was generally traveling in Sarpy County; however, when it improperly crossed the double yellow centerlines, in violation of Neb. Rev. Stat. § 60-6,131 (Reissue 1993), it ventured into Ralston in southern Douglas County. The driving violation was thus partly committed in Ralston. Consistent with the terms of the Resolution, Holtz' pickup was observed "violating a law . . . within the City of Ralston's corporate limits," and Officer Rasgorshek was permitted to pursue the vehicle "for purposes of apprehensions, arrest, ticketing or other official action." We do not read other statutory provisions granting the chiefs of police principal ministerial duties within their respective jurisdictions to be inconsistent with the foregoing. Compare Neb. Rev. Stat. § 14-601 et seq. (Reissue 1991).

It is well settled in Nebraska that an officer observing a traffic violation or driving behaviors which reasonably indicate that the driver may be operating the vehicle while under the influence may make an investigatory stop of the vehicle. *State v. Bowley*, 232 Neb. 771, 442 N.W.2d 215 (1989); *State v. Thomte*, 226 Neb. 659, 413 N.W.2d 916 (1987). An officer who has properly stopped a vehicle may thereafter naturally observe activity of the occupants or observe property in the vehicle within the officer's plain view which may indicate that the driver or occupants were involved in different or additional crimes. See, *State v. Brown*, 232 Neb. 224, 439 N.W.2d 792 (1989) (holding that cylinder for a .22-caliber pistol discovered in vehicle was admissible because officer saw it in plain view within lawfully stopped vehicle); *State v. Thomte, supra* (holding that "seizure" of defendant for purposes of administering field sobriety tests was proper when officer, after lawful stop of vehicle, naturally observed defendant's physical appearance and behavior which indicated signs of intoxication). In the instant case, Officer Rasgorshek reasonably believed he was witnessing drunk driving and observed a driving violation partly committed in Ralston. The

stop was proper. On this record, we cannot say the trial court's implicit finding that the search was consented to is clearly erroneous. Frieze's argument that the stop and subsequent search were improper is not supported by the facts or applicable law.

Frieze argues that the statement he made at the scene, to the effect that Holtz had come to pick him up from his girl friend's house, should have been suppressed by the trial court because Frieze had not been advised of his *Miranda* rights before making the statement. Prior to trial, the State indicated that it would not use the statement in its case in chief. After Frieze testified on direct examination that he had accompanied Holtz to Omaha to guard against a possible attack, the State cross-examined Frieze, confronting him with his prior inconsistent statement. Under the facts, we find no error in the use of the statement.

In *Mincey v. Arizona*, 437 U.S. 385, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978), the U.S. Supreme Court held that a defendant's involuntary statement could not be used against him where the statement was obtained while the defendant was hospitalized and nearly in a coma. The *Mincey* Court, however, endorsed the longstanding rule that a statement made by a defendant in circumstances violating *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), is admissible for impeachment if its trustworthiness satisfies legal standards. See, *Oregon v. Hass*, 420 U.S. 714, 95 S. Ct. 1215, 43 L. Ed. 2d 570 (1975); *Harris v. New York*, 401 U.S. 222, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971). Following our review of the record, we conclude that the statement bore indicia of trustworthiness, and the use of Frieze's statement for impeachment was proper. The trial court did not err in denying Frieze's motion to suppress.

*Sufficiency of the Evidence.*

Frieze argues generally on appeal that the evidence lacks probative force and is insufficient to support a finding of guilt beyond a reasonable doubt. See *State v. Frazier*, 234 Neb. 107, 449 N.W.2d 230 (1989). Frieze argues specifically that the tools are not burglar's tools and that the evidence does not satisfy the

requirement of possession of either the burglar's tools or the short shotgun. In response, the State argues that the evidence supports the convictions.

Upon review of a criminal conviction, this court will not resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. *State v. Wilson*, 238 Neb. 217, 469 N.W.2d 749 (1991). These matters are entrusted to the finder of fact, whose findings will be sustained if the evidence, viewed in the light most favorable to the State, is sufficient to support them. In a criminal case where the trial court sits as the finder of fact, the trial court's findings have the effect of a verdict and will not be disturbed on appeal unless clearly erroneous. *State v. Hand*, 244 Neb. 437, 507 N.W.2d 285 (1993); *State v. Wilson, supra*; *State v. Fellman*, 236 Neb. 850, 464 N.W.2d 181 (1991). It has been repeatedly held that the State is required to establish the defendant's guilt for the crime charged, but is not required to disprove every hypothesis consistent with the defendant's innocence. *State v. Rokus*, 240 Neb. 613, 483 N.W.2d 149 (1992); *State v. Blue Bird*, 232 Neb. 336, 440 N.W.2d 474 (1989).

Nebraska statutes provide as follows:

(1) A person commits the offense of possession of burglar's tools if:

(a) He knowingly possesses any explosive, tool, instrument, or other article adapted, designed, or commonly used for committing or facilitating the commission of an offense involving forcible entry into premises or theft by a physical taking; and

(b) He intends to use the explosive, tool, instrument, or article, or knows some person intends ultimately to use it, in the commission of an offense of the nature described in subdivision (1)(a) of this section.

(2) Possession of burglar's tools is a Class IV felony.

Neb. Rev. Stat. § 28-508 (Reissue 1989).

Nebraska statutes further provide:

(1) Any person or persons who shall transport or possess any machine gun, short rifle, or short shotgun commits a Class IV felony.

(2) The provisions of this section shall not be held to prohibit any act by peace officers, members of the United States armed services, or members of the National Guard of this state, in the lawful discharge of their duties, or persons qualified under the provisions of federal law relating to the short rifle, short shotgun, or machine gun.

Neb. Rev. Stat. § 28-1203 (Reissue 1989).

A review of the evidence as set forth generally above in this opinion shows that the State produced evidence of each element of the crimes charged. Frieze's theories at trial were that the tools were not those of burglars and that he was not in actual possession of either the tools or the shotgun. With respect to the nature of the tools and other items, the stipulated expert testimony that the tools found in the pickup were burglar's tools was sufficient and apparently accepted by the finder of fact.

■ With respect to possession, it has been held that constructive possession may be proved by direct or circumstantial evidence and may be shown by the accused's proximity to the controlled substance at the time of arrest or by the showing of ownership, dominion, and right of control of an automobile in which the contraband was found. *State v. Woodruff*, 205 Neb. 638, 288 N.W.2d 754 (1980) (holding in context of illegal drugs and drug paraphernalia discovered in vehicle that constructive possession could be inferred from defendant's ownership of vehicle and position in vehicle closest in proximity to the contraband). In *State v. Loveless*, 209 Neb. 583, 593, 308 N.W.2d 842, 848 (1981), the Supreme Court stated that "[t]here is little question but that burglary tools would also fall within the definition of 'contraband' " for purposes of application of the constructive possession principle. We infer from *Loveless* that constructive possession applies to possession of a short shotgun under § 28-1203. See, also, Neb. Rev. Stat. § 28-1212 (Cum. Supp. 1994).

After receipt of all the evidence, the trial court found that it was

obvious from the contents of the truck that the four of these people were all out to — on a joint act. There was four of everything to protect each other, and the shotgun was loaded and there was a shotgun shell in the glove

compartment of the truck right in front of [Frieze]. We cannot say, in the context of this trial, that these findings are clearly wrong. The evidence is sufficient to support the convictions.

## CONCLUSION

For the foregoing reasons, we conclude that the trial court did not err in denying Frieze's motion to suppress and that the evidence is sufficient to support the convictions.

AFFIRMED.