**LENNY D. ALFRED, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2011-0024

Supreme Court of the Virgin Islands

February 22, 2012

BENJAMIN A. CURRENCE, ESQ., St. Thomas, USVI, *Attorney for Appellant.*

PAMELA R. TEPPER, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(February 22, 2012)

SWAN, *Associate Justice.* Appellant, Lenny Alfred ("Alfred"), appeals his conviction for Unauthorized Possession of a Firearm in violation of title 14, section 2253 of the Virgin Islands Code. Alfred argues that there was insufficient evidence to prove that he "knowingly" possessed a firearm; therefore, his conviction is invalid and must be vacated. We conclude that the People of the Virgin Islands ("People") presented sufficient evidence at trial to convict Alfred of Unauthorized Possession of a Firearm; consequently, we affirm his conviction.

## I. FACTS & PROCEDURAL HISTORY

The salient facts of this case are as follows: On April 30, 2010, at approximately 7:30 p.m., Alfred was driving eastward in a vehicle on Kronprindsens Gade in the area of the St. Peter and Paul Cathedral Church on St. Thomas, when he was stopped by Officer Latoya Schneider of the Virgin Islands Police Department. As a result of the traffic stop, Officer Schneider, over the police vehicle's public announcement speaker, directed Alfred to exit the vehicle and to bring his driver's license, vehicle registration, and vehicle insurance certification to the police vehicle. Alfred failed to immediately comply with Officer Schneider's directive and began rummaging around the vehicle. Officer Schneider noticed Alfred and the rear seat passenger fumbling in the vehicle during the time she was asking the driver to exit the vehicle. Officer Schneider testified at trial that she made the same request for Alfred to exit the vehicle approximately ten times, and Alfred failed to exit the vehicle. Because of Alfred's failure to immediately respond, Officer Schneider radioed other police units for assistance.

Alfred was driving a black, 4-door Toyota RAV4 vehicle with light tint on the back window. The vehicle had two other occupants — one sitting

287

in the front passenger seat, Joel Rodriguez ("Rodriguez"), and one sitting in the back seat behind the driver, Edgar Fornerin-Cedeno. After other patrol units arrived on the scene, Officer Schneider approached Alfred's vehicle. After approaching the vehicle, Officer Schneider held Alfred by the arm, and Alfred immediately exited the vehicle. The other occupants were ordered to exit the vehicle and instructed to lie on the ground while the officers conducted a search of the vehicle. While searching, one of the officers announced that there was a firearm in Alfred's vehicle. The firearm was found in the middle console in the front area between the driver's seat and the passenger's seat. Thereafter, the police transported all the occupants of the vehicle to the police station. A firearm registry check conducted by the Virgin Islands Police Department on April 30, 2010, revealed that Alfred was not licensed to possess a firearm in the Virgin Islands.

The officers called the police forensics unit to the scene to conduct an investigation. During the officers' search, the forensics unit discovered a wallet in the center console of the vehicle where the firearm was found. No fingerprints were found on the firearm. Inside the wallet, the officers discovered a driver's license, a bank card and an insurance card bearing the name Lenny Alfred. Other miscellaneous papers were retrieved from the center console including three receipts, a bank card receipt, a Texaco gas station receipt and a Red Hook barge ramp receipt which had Alfred's name on it. One of the receipts had the date and time of April 29, 2010 at 2:15 p.m.; another receipt had the same date with a 2:12 p.m. time designation. Another receipt had the date April 30, 2010 at 10:25 a.m.

Alfred's wife testified on behalf of the defense that Alfred rented a vehicle and loaned the vehicle to Rodriguez, around 6:30 p.m. the evening of April 29, 2010. She further testified that Rodriguez returned the vehicle the next morning about 8:00 a.m. Likewise, Alfred testified that Rodriguez did return the vehicle on the morning of April 30, 2010, and he left home in the same rental vehicle around 9:00 a.m. and embarked on the 10:30 a.m. barge for his trip to the island of St. John. (J.A. at 123.) Alfred testified that he went to St. John with his brother-in-law and his brother-in-law's fiancée and returned to St. Thomas about 5:00 p.m. the same day. Alfred further testified that Rodriguez called him and stated that he, Rodriguez, had forgotten something in the vehicle. Alfred picked up Rodriguez from the Contant area and commenced traveling eastward

towards the Savan area. As they drove eastward, Alfred picked up Fornerin-Cedeno who became the third occupant in the rental vehicle.

Alfred's version of the traffic stop is different from the officer's version, in that he only recalled being instructed twice by Officer Schneider to provide his driver's license and vehicle registration. Alfred further asserts that while he was retrieving the documents in the vehicle, the officer approached the vehicle and ordered him to exit the vehicle. Thereafter, the People charged Alfred with Unauthorized Possession of a Firearm under title 14, section 2253(a) of the Virgin Islands Code.

At the close of the People's case, the defense made a Rule 29 Motion for Judgment of Acquittal,[1] arguing that there was insufficient evidence to prove that Alfred knowingly possessed the firearm. Finding that sufficient evidence was presented to the jury on each element on the offense charged, the trial judge denied the Rule 29 Motion. The defense renewed the Rule 29 Motion at the close of all the evidence, and the trial court again denied the Motion.

The jury was unable to reach a verdict in the first trial of this case. On January 20, 2011, the matter was retried and the jury returned a verdict of guilty. Alfred was sentenced to one year imprisonment and a fine. (J.A. at 5.) The trial court entered its judgment on March 17, 2011. Alfred timely appealed his conviction on March 11, 2011.

## II. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code states that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." A final order is a judgment from a court which ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment. *Williams v. Gov't of the V.I.*, 54 V.I. 590, 595 (V.I. 2011); *In re Truong*, 513 F.3d 91, 94 (3d Cir. 2008) (citing *Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 381 (3d Cir. 1996)). The Superior Court entered a final judgment and commitment in this matter on January 26, 2011.

---

[1] Rule 29 motions are made pursuant to Federal Rule of Criminal Procedure Rule 29, which applies to the Superior Court via Superior Court Rule 7.

## III. STANDARD OF REVIEW

The standard of review for this Court's examination of the Superior Court's application of law is plenary, while the trial court's findings of fact are reviewed for clear error. *Blyden v. People*, 53 V.I. 637, 646 (V.I. 2010); *Pell v. E.I. Dupont de Nemours & Co. Inc.*, 539 F.3d 292, 300 (3d Cir. 2008).

## IV. DISCUSSION

### There was sufficient evidence to convict Alfred of the crime of Unlawful Possession of a Firearm under title 14, section 2253 of the Virgin Islands Code

In assessing whether the People presented sufficient evidence to convict Alfred of Unauthorized Possession of a Firearm, this Court is required to view the evidence in the light most favorable to the People and apply a highly deferential standard of review to the jury's verdict. *United States v. Conatser*, 514 F.3d 508 (6th Cir. 2008). In doing so, we are prohibited from weighing the evidence or determining the credibility of witnesses. *Smith v. People*, 51 V.I. 396, 401 (V.I. 2009).

Alfred argues that based on the evidence in the record it was impossible for the jury to find him guilty of unlawful possession of a firearm beyond a reasonable doubt. (Appellant's Br. 6.) The elements for the crime of Unlawful Possession of a Firearm are codified in title 14, section 2253(a) of the Virgin Islands Code. This provision states that,

> Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either, actually or constructively, openly or concealed any firearm, as defined in Title 23, section 451(d) of this code, loaded or unloaded, may be arrested without a warrant, and shall be sentenced to imprisonment of not less than one year nor more than five years . . .

Conviction under this provision may be upheld where an individual possesses a firearm, "either . . . actually or constructively," without being authorized by law to do so. *See* 14 V.I.C. § 2253(a). The Virgin Islands Code defines "constructive possession" as "having the power and the intention at any given time to exercise dominion or actual control over the firearm, either directly or through another person." 14 V.I.C. § 2253(d)(5). Having the intention at any given time to exercise control over the firearm

indicates that the person has some knowledge of the firearm's presence. *See United States v. Iafelice*, 978 F.2d 92, 96 (3d Cir. 1992) ("constructive possession necessarily requires both 'dominion and control' over an object and knowledge of that object's existence").

Alfred argues that there was no proof that he had knowledge of the firearm's presence in the vehicle. *Id.* Alfred further argues that he loaned the vehicle to his friend Rodriguez the day before, and Rodriguez forgot the firearm in the vehicle. Notwithstanding Alfred's attempt to assign ownership and possession of the firearm solely to Rodriguez, sufficient evidence was presented for a reasonable jury to find that Alfred "knowingly" possessed the firearm.

The evidence informs that Alfred rented the vehicle and was in possession of the vehicle from 8:00 a.m. to approximately 7:30 p.m. on the day he was stopped by Officer Schneider. Alfred's wallet, which safeguarded his license, an insurance card and bank cards with his full name, was in the same compartment of the vehicle's console where the firearm was found. Alfred claims that the firearm could have been in the compartment with those materials without his knowledge, since he loaned the vehicle to Rodriguez from 6:00 p.m. on April 29, 2010 to approximately 8:00 a.m. on April 30, 2010. Nevertheless, the evidence also informs that receipts were in the console of the vehicle. One of the receipts was from the St. John barge which Alfred received the same morning after Rodriguez allegedly returned the vehicle to him. The time registered on the receipt was 10:30 a.m. on April 30, 2010. However, Alfred suggested that the firearm would have been in the vehicle before the vehicle was returned to him.

Alfred also testified that he searched the vehicle's console for his wallet when the police ordered him to exit the vehicle. At this juncture, there is a compelling inference that Alfred knew the firearm was in the vehicle because the photographs of the interior of the vehicle, which were admitted in evidence, reveal that Alfred's wallet was placed next to the firearm in the same console. However, Alfred never informed the police that he had not previously seen the firearm in the vehicle, or that he was unaware of its presence until looking for his license, or that another person may have placed the firearm in the vehicle unbeknownst to him. Only after Rodriguez's death has Alfred suggested that Rodriguez was responsible for the firearm's presence in the vehicle. Rodriguez was the person to whom Alfred allegedly loaned the vehicle, and who was sitting

■■■   ■■■■■   ■■■

in the front passenger's seat at the time of the traffic stop. Alfred's contention is convoluted and spurious, bordering on a complete prevarication. Importantly, before Rodriguez's demise and in Rodriguez's presence at the police station, Alfred had an opportunity, while in the presence of the arresting officers, to disavow ownership of the firearm and to assign its ownership to Rodriguez. Rodriguez's statement at the police station at the time of his arrest and spoken in the presence of Alfred is compelling. Notably, Rodriguez's statements were presented to the jury by way of the People's cross-examination of Alfred concerning Alfred's defense. The cross-examination statements, which reference Rodriguez by his first name of "Joel" are illuminating and include:

> Q. Now, isn't it true that when you were taken to the police station, Joel was also taken to the police station?
>
> A. He was.
>
> Q. Isn't it true that at one point the police officers allowed Joel to come into the room where you were being asked questions by police officers?
>
> A. Yes.
>
> Q. And isn't it true that Joel physically got on his knees and said, *please, please, tell him the truth, tell him you were giving me a ride.* Didn't he say that? Wasn't he on his knees saying, *please, please, just tell them you were giving me a ride*
>
> A. Well, I gave Joel a ride.
>
> Q. So, what did you tell the police?
>
> A. I told the police exactly what I did, I gave Joel a ride.
>
> Q. So, at that point, you didn't say, *that gun, that's Joel's gun?* You didn't say that; did you?
>
> A. I ain' said nothing of that [sic].
>
> Q. You didn't say, *I don't have anything to do with the gun, that guy, by the way, took my car and he lent it, so it must have been him*; did you?
>
> A. I never discussed this.
>
> Q. And in fact, the police let Joel go didn't [they]?
>
> A. I had no idea the police had released Joel out at that time. I found that out later, much later.
>
> Q. You also found out Joel died two weeks later; didn't he?

A. No.

Q. But you know that Joel is deceased now; do you know that?

A. I know that now.

Q. So, between the time that he was at the police station and you said, *yeah, I was giving him a ride*, and today he is dead, Joel, your friend?

A. Well, both you and I know that he's dead.

Q. Now that he's dead, you're telling us for the first time that Joel lent your car? You never told anyone [that] Joel borrowed your car? You never told Officer Schneider, Joel *by the way borrowed my car*; did you?

A. Because I never had any conversation with Miss Latoya Schneider.

Q. No. I am asking you a question, and the question is, did you ever tell any police officer that Joel borrowed your car?

A. I was never asked this question.

Q. Okay. But you never told Officer Matthew, *Joel borrowed my car*; did you?

A. I was never asked this question by Officer Matthew either.

Q. You never told any police officer that Joel borrowed your car; did you?

A. I was not asked this exact question by any officer.

(J.A. at 143-146.) The jury had ample basis on this record to conclude that Alfred has concocted a "defense of convenience" prompted by Rodriguez's subsequent death. Alfred attempts to inferentially implicate Rodriguez as the owner of the firearm and simultaneously insulate himself from blame. However, in the evaluation and determination of Alfred's credibility, the jurors could consider Alfred's failure to assign ownership of the firearm to Rodriguez at the police station, or at the time of his and Rodriguez's arrests on Kronprindsens Gade. Essentially, the cross-examination of Alfred revealed a dismal failure of Alfred's defense that the gun could possibly have been Rodriguez's gun. Furthermore, Alfred's reason for not assigning ownership of the gun to Rodriguez prior to his death casts a long, cynical shadow of a complete lack of credibility on Alfred's testimony.

■■ In reviewing the sufficiency of the evidence convicting Alfred, we find that there was sufficient circumstantial evidence for a jury to conclude that Alfred was in constructive possession of the firearm and for the jury to make credibility determinations concerning Alfred's testimony.

Likewise, the same circumstantial evidence supports the jury's guilty verdict. These assertions are buttressed by the following: The firearm was found in a vehicle rented and used extensively by Alfred over a period of days. *See State v. Frieze*, 3 Neb. Ct. App. 263, 525 N.W.2d 646, 653 (Neb. Ct. App. 1994) (noting that constructive possession may be shown by the accused's proximity to the contraband at the time of the arrest or by the showing of ownership, dominion, and right to control of an automobile in which the contraband was found); *see also U.S. v. Piwowar*, 492 F.3d 953, 955-56 (8th Cir. 2007); *People v. Zambetta*, 132 Ill. App. 3d 740, 477 N.E.2d 821, 829, 87 Ill. Dec. 695 (Ill. App. Ct. 1985). Alfred's wallet was found in the center console of the vehicle where the firearm was located. The firearm was in the console adjacent to Alfred's driver seat and certainly within his arm's reach for purpose of the element of possession. *See, e.g., Smallwood v. Commonwealth*, 278 Va. 625, 688 S.E.2d 154, 157 (Va. 2009) (affirming conviction for unlawful possession of a firearm based on constructive possession theory where firearm was recovered from top of center console between driver and front passenger seat, near defendant's right leg, because "[i]n an instant [he] could have had actual, exclusive possession of the firearm, since [his] access to the firearm was not restricted in any way"). Alfred's was involved in a surreptitious commotion in the vehicle after Officer Schneider ordered him to exit the vehicle. *See Hill v. State*, 1995 OK CR 28, 898 P.2d 155, 166 (Okla. Crim. App. 1995) (noting that moving around in vehicle suspiciously while waiting for police raises the strong inference that occupant is seeking to mask criminal activity). Accordingly, after consideration of the above, we find no error in the trial court's denial of the defense's Rule 29 Motion for Judgment of Acquittal.

## V. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Superior Court.