**JUSTIN SONSON, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2009-0109
Supreme Court of the Virgin Islands
September 9, 2013

KELE C. ONYEJEKWE, ESQ., Territorial Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

MATTHEW C. PHELAN, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(September 9, 2013)

SWAN, *Associate Justice.* Appellant, Justin Sonson ("Sonson"), appeals his convictions for aiding and abetting the unauthorized possession of a firearm under title 14, sections 11(a) and 2253 of the Virgin Islands Code, and aiding and abetting the failure to report ammunition purchased outside or brought into the Virgin Islands under title 23, section 470 and title 14, section 11(a) of the Virgin Islands Code. Sonson asserts that the

Superior Court erred when it found him guilty of failure to report ammunition because he neither purchased nor obtained any ammunition. Sonson further asserts that title 14, section 2253 of the Virgin Islands Code is unconstitutional because it is impossible for a constructive possessor of a firearm to be authorized by law to possess a firearm. For the reasons elucidated below, we affirm the convictions on both counts of the Information and further decline to consider the constitutionality of title 14, section 2253 of the Virgin Islands Code.

## I. FACTS AND PROCEDURAL HISTORY

On or about April 1, 2009, Sonson and others were involved in a verbal altercation in the vicinity of Paradise Mills, Frederiksted, St. Croix. The incident started in the Campo Rico area, when Martin Emmanuel ("Emmanuel") and his two sons, Deshawn Samuel and Derrick Samuel, were approached by a man, Doug Forbes ("Forbes"), of approximately their age. Forbes began vilifying Emmanuel and his two sons as a continuation of an on-going feud between Forbes and one or both of Emmanuel's sons.

Emmanuel and his sons decided to depart the Campo Rico area in Emmanuel's vehicle and to proceed towards their home. Before arriving home, Emmanuel and his sons stopped at a gasoline station to refuel the vehicle. Forbes also stopped at the same gas station. A verbal altercation ensued between the Emmanuels and Forbes. Emmanuel and his sons drove to another gas station, and Forbes again followed them. Another verbal altercation erupted between the parties at the second gas station, including threats by Forbes against the Emmanuels. Eventually, Emmanuel and his sons departed the second gas station and proceeded to their home. During the two gas station incidents, Forbes had been driving by himself in a black Honda Civic vehicle.

Subsequently, Forbes arrived at Emmanuel's house in Paradise Mills, in the same vehicle he was earlier driving, but now accompanied by Sonson. Sonson approached the door of Emmanuel's house while Forbes stayed by the vehicle approximately ten to fifteen feet away. When Sonson approached, Emmanuel and his two sons were at the door but still inside of their house. Sonson inquired of the Emmanuels as to who was "messing with his partner," Forbes. Emmanuel encouraged Sonson to enter his home to further discuss Sonson's accusation against them. When Sonson refused, Emmanuel grabbed Sonson's arm, causing Sonson's shirt

to tear. Also, Emmanuel saw Forbes, who was standing by the Honda Civic vehicle, reach into the back seat of the vehicle and retrieve a firearm. Sonson immediately shouted at Forbes "No, no, no, no, not yet, not yet!" After Emmanuel saw the firearm in Forbes' possession, he decided to call the police. When Emmanuel returned to the door, Sonson and Forbes had already departed from his house in the Honda Civic vehicle.

As Forbes and Sonson were departing the area of Emmanuel's home, they were intercepted by police at a traffic light in the vicinity of Paradise Mills. Forbes, the driver of the vehicle, attempted to reverse from the stop light in order to circumnavigate the traffic in front of him to evade the police vehicle, but was stopped by responding police patrol units. The police approached the Honda Civic vehicle and ordered Forbes to exit the vehicle. The police restrained Forbes with handcuffs and proceeded to search him. Other officers ordered Sonson, who was sitting in the front passenger's seat, out of the vehicle, but before they could restrain him, Sonson started running from the scene. Sonson ran about a quarter of a mile before he was apprehended by police officers who were patrolling the area on foot. Thereafter, Sonson was returned to the police vehicle and subsequently transported, together with Forbes, to the police station. Both men refused to give statements to police about the incident with the Emmanuels.

The police immediately conducted an inspection of the Honda Civic vehicle which was still in Paradise Mills. The police discovered an old, black, spray-painted shotgun with a sawed off barrel, lying on the back seat of the Honda Civic vehicle behind the driver's seat. The firearm's location was within arm's reach or immediate control of both Sonson and Forbes. Forensic technicians retrieved the firearm from the vehicle and later discovered a live round of ammunition in the chamber of the shotgun. The police department's firearms expert tested the weapon and concluded that it was capable of discharging ammunition. Neither Forbes nor Sonson had a license to carry or to possess a firearm.

The People charged Sonson with aiding and abetting in the possession of the firearm and aiding and abetting the failure to report ammunition. A jury found Sonson guilty on both counts. The Information charged Sonson with "not having reported such in writing or in person to the Police Commissioner, bring[ing] into or receiv[ing] ammunition within the Virgin Islands, to wit: A 12 gauge shotgun round, in violation of

23 V.I.C. § 470 . . . (REPORT OF FIREARMS/AMMUNITION PURCHASED OUTSIDE OR BROUGHT TO VIRGIN ISLANDS . . .)" The Order of Judgment and Sentence states that Sonson was found "Guilty of Count Two of the Second Amended Information, to wit: Report of Firearms/Ammunition Purchased Outside or Brought to the Virgin Islands." The Order of Judgment and Sentence was entered on October 30, 2009. Sonson timely appealed his convictions.

## II. JURISDICTION AND STANDARD OF REVIEW

"The Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4, § 32(a). This appeal arises out of a final judgment by the Superior Court. *Browne v. People*, 56 V.I. 207, 216 (V.I. 2012) (in a criminal case, a written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment under 4 V.I.C. § 32(a)).

We exercise plenary review over questions of law and statutory construction. *Gilbert v. People*, 52 V.I. 350, 354 (V.I. 2009). When the appellant neglects to raise his statutory or constitutional claim before the trial court, we review for plain error. The plain error standard states that an appellate court may correct an error not raised at trial if it finds: 1) an error, 2) that is plain, 3) that affects substantial rights, and 4) if, in its discretion it finds that "the error seriously affects the fairness, integrity, or public reputation of [the] judicial proceedings." *Jackson-Flavius v. People*, 57 V.I. 716, 721 (V.I. 2012) (citing *United States v. Dobson*, 419 F.3d 231, 236 (3d Cir. 2005)).

This Court will apply a highly deferential standard of review to the jury's verdict. *United States v. Kellogg*, 510 F.3d 188, 202 (3d Cir. 2007). Additionally, we "examine the totality of the evidence, both direct and circumstantial, and 'interpret the evidence in the light most favorable to the government as the verdict winner.' " *United States v. Pavulak*, 700 F.3d 651, 668 (3d Cir. 2012) (quoting *United States v. Starnes*, 583 F.3d 196, 206, 52 V.I. 1051 (3d Cir. 2009) and *United States v. Miller*, 527 F.3d 54, 60, 62 (3d Cir. 2008)) (citations and internal quotation marks omitted). The jury's verdict will be upheld if there is substantial evidence from which a reasonable trier of fact could find, beyond a reasonable doubt, the essential elements of the crime. *Miller*, 527 F.3d at 60. In

making this determination, we do not judge the credibility of a witness nor weigh the evidence. *Christopher v. People*, 57 V.I. 500, 514-15 (V.I. 2012); *Smith v. People*, 51 V.I. 396, 401 (V.I. 2009) (citing *United States v. Carr*, 25 F.3d 1194, 1201 (3d Cir. 1994)). We review a claim of error in the final jury instructions for abuse of discretion. *Williams v. People*, 55 V.I. 721, 727 (V.I. 2011), but in the absence of an objection at trial, we review for plain error. *Jackson-Flavius*, 57 V.I. at 721.

## III. DISCUSSION

Sonson challenges his convictions for aiding and abetting the unauthorized possession of a firearm and failure to report ammunition. Sonson argues that these convictions should be vacated for two reasons. First, Sonson argues that a finding of guilty for failure to report ammunition was error because there was no evidence that he "purchased" or "obtained" ammunition as required for a finding of guilty for failure to report ammunition. Second, Sonson argues that title 14, section 2253 of the Virgin Islands Code violates the Second and Fourteenth Amendments to the United States Constitution.

### A. Sufficient evidence exists to prove that Sonson failed to report the ammunition.

Sonson propounds several reasons why the jury erred in finding him guilty of failure to report ammunition under title 23, section 470 of the Virgin Islands Code. Sonson's arguments are anchored in the proposition that it was impossible to find that he "purchased" or "obtained" the ammunition. To support this proposition, Sonson first argues that the People of the Virgin Islands ("People") never proved when the ammunition was acquired or brought into the Territory and provided no evidence that the firearm containing that ammunition was "purchased" or "obtained" by him. Second, Sonson argues that it was Forbes' responsibility to report the ammunition and that he could not aid or abet a crime that had already been committed by Forbes' failure to report. Third, Sonson argues that title 23, section 470 only addresses actual purchases or claims to title and not mere possession; therefore, he contends, the trial court's final jury instructions on title 23, section 470 — which included the word "possessed" — were erroneous. Essentially, Sonson's arguments presume that proof of possession of the ammunition cannot be sufficient to prove that he "purchased" or "obtained" the ammunition.

596

The adjudication of these issues rests on the interpretation of title 23, section 470 and its application to the facts of this case.

▌Title 23, section 470 states in relevant part:

### Report of firearms purchased outside or brought into the Virgin Islands; fees; penalty

(a) Any person other than a licensed dealer, who purchases or *otherwise obtains* any firearms or ammunition from any source within or outside of the Virgin Islands shall report such fact in writing or in person to the Commissioner immediately after receipt of the firearm or ammunition, furnishing a complete description of the firearm or ammunition purchased or otherwise obtained. He shall also furnish his own name, address, date of birth and occupation.

(Emphasis added.) To sustain a conviction under section 470 there must be evidence of a failure to report the purchasing or obtaining of ammunition. No evidence was presented at trial confirming that Sonson purchased the ammunition. Therefore, our inquiry focuses on whether the evidence supported a finding by the jury that Sonson "otherwise obtained" the ammunition as provided in the statute. We hold that the evidence presented at trial was sufficient to support the jury's conclusion that Sonson possessed, at least constructively, the ammunition. The trial judge imparted to the jury the following final instructions:

In order to convict the defendant of the crime *Failure to Report Ammunition Obtained*, as a charge in the information, the people must prove each of the following elements beyond a reasonable doubt: That the defendant knowingly and intentionally *obtained and possessed* ammunition from either within or outside of the Virgin Islands. The defendant was not a licensed firearm or ammunition dealer. That the defendant knowingly did not report in writing or in person to the Police Commissioner the defendant's possession or receipt of the ammunition, and that the defendant did possess a shotgun round on or about April 1, 2009.

(J.A. 256) (emphasis added). However, Sonson argues that "possession" is not explicitly stated in the provisions of title 23, section 470 and therefore he contends that this term should not have been included in the final jury instructions. More specifically, Sonson argues that the word "obtains" is not

synonymous with "possession;" therefore, he maintains that the two words should not be used interchangeably.

■ In determining the manner in which title 23, section 470 is to be construed, we first examine the plain language of the statute under the assumption that the legislature's intent is manifested through the ordinary meaning of the words chosen. *Rohn v. People*, 57 V.I. 637, 643 (V.I. 2012); *Shoy v. People*, 55 V.I. 919, 926 (V.I. 2011). *See also Gov't of the V.I. v. Knight*, 989 F.2d 619, 633, 28 V.I. 249 (3d Cir. 1993) (citing *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S. Ct. 2051, 64 L. Ed. 2d 766 (1980)). If the language is ambiguous, we will proceed to examine the legislative history of the statute and its purpose to ascertain if the interpretation was within the legislature's intent. *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 236 n.3, 130 S.Ct. 1324, 1332 n.3, 176 L. Ed. 2d 79 (2010). Importantly, this Court will construe the statute sensibly and avoid interpretations which would yield absurd results. *Gilbert*, 52 V.I. at 356; *see also Milavetz*, 559 U.S. at 245; *Gov't of the V.I. v. Berry*, 604 F.2d 221, 225, 16 V.I. 614 (3d Cir. 1979). Sonson suggests that there must be evidence of the time, place and manner of a transfer of the firearm/ammunition into his possession in order to demonstrate that he "obtained" these items in violation of title 23, section 470. Sonson further argues that the evidence of his possession of the ammunition does not directly prove that he "obtained" the ammunition. Considering these contentions, the issue is whether proof of Sonson's possession of the ammunition is sufficient to confirm that he "obtained" the ammunition in violation of title 23, section 470 of the Virgin Islands Code. Because this issue is not directly addressed in the language of the statute, we will proceed to interpret the meaning of the word "obtained" and its application under section 470.

Title 1, section 42 of the Virgin Islands Code states that "[w]ords and phrases shall be read with[in] their context and shall be construedaccording to the common and approved usage of the English language."[1] Consistent with this prescription, we will first examine the "common and approved" usage of the word "obtains" in the English

---

[1] The full provision of title 1, section 42 states:

Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language. Technical words and phrases,

language. Several dictionaries, particularly Webster's Dictionary, define the word "obtain" as "to gain or attain possession . . . of" or "to hold on, to keep, to possess."[2] Additionally, thesauruses have listed "possession" as a direct synonym of "to obtain."[3] Likewise, "obtain" is the same as "to gain possession of." ROGET'S DESK THESAURUS 371 (2001). Commonsensically, it would be difficult to conceive how one could possess a firearm or ammunition without simultaneously obtaining the same firearm/ammunition or vice versa.

■ Legislative history, as well as the general practice of courts interpreting title 23, section 470, supports the conclusion that a person found in possession of a firearm or ammunition can be found in violation of title 23, section 470, if the firearm or ammunition is not reported to the Commissioner. Statements of Virgin Islands senators during the legislative debates on the amending of this statute reveal that the word "possession," although not explicitly included in the language of the statute, was intended to be an integral part of the meaning and application of 23 V.I.C § 470. In the floor debates to consider amending section 470, former Senator Osbert Potter stated, "with a loophole as big as the one that is currently on the books that allow[s] for a 24 hour reporting period you can clearly see that anyone at any time can easily utilize that loophole as a means of avoiding their basic responsibility and their *possession* of a firearm [or ammunition] whether acquired legally or illegally." *United States. v. McKie*, 112 F.3d 626, 632, 36 V.I. 367 (3d Cir. 1997) (citing Hearing on Bill No. 21-0219, to amend Title 23, Section 470 of the Virgin Islands Code, Reg. Sess. (V.I. Aug. 29, 1996) (emphasis added). Likewise, former Senator Almando Liburd stated, "This bill involves closing some loopholes that essentially provide for a field day for a criminal element in the area of firearm [or ammunition] *possession.*" *Id.* (emphasis added). Undeniably, the legislature intended title 23, section 470 of the Virgin Islands Code to apply to persons found in possession of a firearm or ammunition that is not immediately reported to the Commissioner.

---

and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to their peculiar and appropriate meaning.

[2] Webster's Third New Int'l Dictionary 1559 (1993); Webster's Online Dictionary, http://www.websters-online-dictionary.org/definition/obtains (last visited Nov. 30, 2012).

[3] WEBSTER'S COLLEGE THESAURUS 496 (2000).

In *McKie*, the case in which these statements are amplified, the United States Court of Appeals for the Third Circuit extensively discussed the provisions of title 23, section 470 together with its legislative history and intent. At the time of the *McKie* case, the legislature had recently amended section 470 and simultaneously included the word "immediately" while deleting the phrase "within 24 hours." *McKie*, 112 F.3d at 630. The People were previously required to prove during trial that the defendant *possessed* the firearm/ammunition for more than twenty-four hours and failed to report the possession as required by the statute at the time of the offense in *McKie*. *Id.* at 629. The trial court and the Third Circuit recognized "possession" as an element of the crime although possession was not explicitly stated in the statute. *Id.* at 631. Importantly, in referencing the provisions of the statute in the *McKie* case, the Third Circuit includes the word possession when it states, "Under the current statute, a person must obtain a license 'immediately' upon possession of a firearm." *Id.* at 630.

Additionally, title 23, section 470 has a significant connection to the unauthorized possession statute, title 14, section 2253, which states in part:

**2253. Carrying of firearms; openly or concealed; evidence of intent to commit crime of violence; definitions**

(a) Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either, actually or constructively, openly or concealed any firearm, as defined in Title 23, section 451(d) of this code, loaded or unloaded, may be arrested without a warrant, and shall be sentenced to imprisonment of not less than one year nor more than five years and shall be fined not less than $5,000 nor more than $15,000 or both the fine and imprisonment . . . .

██ ██ As noted in *McKie*, the purpose of section 2253 is to penalize unlawful gun possession. 112 F.3d at 631. Under section 470, possessing a firearm or ammunition would not be deemed unlawful if evidence is presented that the defendant attempted to "immediately" report possession of the firearm/ammunition to the Commissioner. 23 V.I.C. § 470. Therefore, a trial court would have to determine, based on the facts of the case, whether the defendant had the firearm/ammunition in his

possession and failed to immediately report such possession. Finding that a conviction under title 23, section 470 can only be secured where there is proof of a transfer of title or ownership of a firearm or ammunition would be incompatible with the explicit language, intent and purpose of the statute. Moreover, neither section 2253 nor section 470 addresses or mentions ownership or title of a firearm or ammunition in its statutory language. Rather, section 470 addresses a person who "purchases" and "otherwise obtains" the regulated items, which is tantamount to possession or the functional equivalent of possession.[4] To hold that the statute addresses or mentions ownership or title would require us to add language into the statute that does not currently appear in it. Such is an

---

[4] In an opinion concurring in part and dissenting in part, Chief Justice Hodge argues that in affirming Sonson's conviction under 23 V.I.C. § 470, this Court errs in interpreting section 470 to "encompass[] both actual and constructive possession." (Concurring/Dissenting Op. 2.) Urging a "plain language" reading of section 470, the opinion indicates that "[m]any courts to have considered the question have held, when a criminal statute refers to possession without referencing actual or constructive possession, that only actual possession is contemplated." (*Id.* (emphasis in original)). While this may be true, we cannot interpret the plain meaning of the word "possession" here because it does not appear in section 470(a). Instead, this section requires anyone "who *purchases or otherwise obtains* any firearms or ammunition from any source . . . [to] report such fact in writing or in person to the Commissioner immediately after receipt of the firearm or ammunition." 23 V.I.C. § 470(a) (emphasis added). As we indicated earlier in the opinion, this language clearly extends beyond actual, physical possession. Additionally, even if the reporting requirements of section 470 did only apply to those in "possession" of a firearm or ammunition, the three cases cited by the concurring opinion would still be distinguishable, as all three deal with statutes criminalizing the possession of a firearm during the commission of another crime, not possession for the purposes of reporting requirements. *See State v. Garza*, 256 Neb. 752, 592 N.W.2d 485, 493-94 (1999) ("to hold that the term 'possession,' as used in § 28-1205, includes constructive possession would be manifestly inconsistent with the . . . purposes [of] discourag[ing] individuals from employing deadly weapons [during] the commission of felonies" (internal citations and quotation marks omitted)); *People v. Garcia*, 197 Colo. 550, 595 P.2d 228, 231 (1979) ("Interpreting 'possession' to mean anything other than actual or physical control would be inconsistent with aim of statute" banning possession of a firearm while intoxicated where statute is aimed at banning "active use" of the firearm); *Mack v. State*, 312 A.2d 319, 322 (Del. 1973) (limiting "possession to mean 'availability and accessibility' where '[t]he manifest purpose of [the statute] is to discourage the [a]ccessibility of a deadly weapon during the commission of a crime, thus reducing the probability of serious harm to the victim' "). Furthermore, if this Court were to adopt the concurring opinion's interpretation of section 470, a person who "purchases or otherwise obtains" a firearm and fails to report it would be able to completely avoid prosecution under section 470 by simply keeping the firearm at home in a closet or drawer, or even in the glove compartment of his or her car. *See Billu v. People*, 57 V.I. 455, 469 (V.I. 2012) (recognizing that we must avoid "absurd consequences" in statutory construction).

exercise we cannot undertake under the guise of construing the statute. *See United States v. Casiano*, 113 F.3d 420, 425 (3d Cir. 1997) (court refrained from inserting words into statute which were not originally included in the statute); *see also* 2A NORMAN J. SINGER, SUTHERLAND STATUTES & STATUTORY CONSTRUCTION § 46.02 (5th ed. 1992).

■ Also, Sonson's argument that the trial court's instructions requiring a finding of possession or receipt of the firearm or ammunition destroyed juror unanimity is misplaced. He contends that "because it is impossible to tell how many jurors believed that he had 'possession' as opposed to those jurors who may have believed he had 'receipt,' it was impossible for jurors to render a unanimous verdict." (App. Br. At. 20.) We have already determined that the words "obtained" and "possessed" as interpreted under title 23, section 470, are indistinguishable and that "possessed" is the functional equivalent of "obtained." Therefore, there is no issue regarding jury unanimity in this case.

■ Having established that a person found in possession of a firearm or ammunition can be found to have obtained the firearm or ammunition, we will now examine whether the application of section 470 to the facts in this case could yield valid convictions. In viewing the facts in the light most favorable to the People, the trial record confirms that Sonson drove to and from the confrontation at Emmanuel's house in the same Honda Civic vehicle in which the firearm and ammunition were found. The firearm and ammunition were found within arm's reach or within the immediate control of Sonson, who was the passenger in the vehicle, thereby creating "constructive possession." *Alfred v. People*, 56 V.I. 286, 294 (V.I. 2012) (proof of vehicle occupant's constructive possession of firearm held sufficient where firearm was within arm's reach of vehicle occupant and that occupant's access to the firearm was not restricted in any way). We are mindful that unlike the size of a sports utility vehicle, a Honda Civic is a small compact vehicle. Disproving the possibility that Sonson had no knowledge that the firearm and ammunition were in the vehicle are Sonson's statements to Forbes at Emmanuel's home, where he shouted to Forbes, who retrieved the firearm from the back seat of the vehicle and presented it in plain view, "No, no, no, no, not yet, not yet." Perhaps, if Sonson's only words were "no, no, no, no," it plausibly could be argued that he had no knowledge of the firearm until that moment when it was retrieved by Forbes, and Sonson's statement was an effort to prevent or discourage Forbes from using it. However, Sonson's inclusion

of the injunction "not yet," in conjunction with the other words he shouted, indicates collaboration with Forbes to use the firearm at an opportune time while at Emmanuel's house. Whether or not Sonson felt that the circumstances at Emmanuel's house warranted use of the firearm against Emmanuel or his sons, his statements demonstrate knowledge of the firearm and its location in the Honda Civic vehicle. Importantly, upon leaving Emmanuel's home, Sonson immediately returned to the same Honda Civic vehicle where the firearm and ammunition were located, and at that time he must have been aware that the firearm and ammunition were in the vehicle and likewise aware of his "constructive possession" of the same firearm and ammunition. It is pivotal in this case that "actual possession" and "constructive possession" are treated in the same manner in that whatever the quality of possession of firearm or ammunition, the intent of the statute is that the possessors immediately report the possession to the Commissioner. The obligation to report the firearm or ammunition to the Commissioner has absolutely nothing to do with ownership or title of the firearm or ammunition.

 Forbes pled guilty to failing to report the firearm and ammunition while being aided and abetted by Sonson. Forbes' plea is not an admission of ownership of the gun but rather an admission that he otherwise obtained and had possession of it, and of his failure to immediately report to the Commissioner a firearm and ammunition that he possessed. Under our law, it is not necessary for a jury to determine whether Forbes and Sonson actually owned the firearm and ammunition: proof of ownership is irrelevant for a conviction under section 470 because the statute addresses items "otherwise obtained" or "possess[ed]" and not "ownership." Persons who steal firearms/ammunition acquire no ownership interest in them, but clearly could be found guilty of the crimes under sections 2253 and 470. *Compare Codrington v. People*, 57 V.I. 176, 199 (V.I. 2012) ("evidence is sufficient for a jury to find . . . constructive possession of [stolen] items . . . when those items are found in the . . . car and the driver [or passenger] has knowledge that the items are present in the car"). Furthermore, the responsibility of reporting does not always lie with one person, if more than one person is found in joint possession of the firearm or ammunition, whether the possession is actual or constructive. Because the evidence was more than sufficient to warrant the jury in concluding that both Sonson and Forbes had actual knowledge that the firearm and ammunition were in the vehicle and each had the

ability to exercise dominion and control over the firearm and ammunition found in the Honda Civic vehicle in which both were occupants, there was no error in both parties being convicted of aiding and abetting each other in the failure to report the firearm and ammunition under title 23, section 470. *See Maryland v. Pringle*, 540 U.S. 366, 373, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003) (noting that where more than one person is found with illegal contraband — in this case cocaine — it is reasonable to infer that all occupants had knowledge and control of the contraband for purposes of probable cause and constructive possession); *see also Wyoming v. Houghton*, 526 U.S. 295, 304-05, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999) (Court noted that "a car passenger will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing.").

Title 23, section 470 requires persons who otherwise obtain ammunition to "immediately" report. such fact in writing to the Commissioner. The trial record is devoid of any facts suggesting Sonson sought to immediately report the ammunition to the Commissioner. Sonson and Forbes went to Emmanuels' house with the firearm and ammunition in the black Honda Civic. No evidence exists that Emmanuel's house in Paradise Mills is the police station or a government facility for reporting firearms and ammunition. Importantly, at Emmanuel's home Forbes retrieved a firearm from the vehicle to threaten Emmanuel and his sons while he acted collaboratively with Sonson. Therefore, considering these facts, it is undeniable that Sonson failed to "immediately" report to the Commissioner, as required by 23 V.I.C. § 470, the ammunition, which he constructively possessed immediately before he exited the vehicle to confront the Emmanuels and when he drove away in the same vehicle after leaving the Emmanuel's home.

██ ██ Sonson's contention that the crime of failure to report had already been committed before he became a constructive possessor is also without merit. The crime under section 470 is not one in which a single act occurred and the crime ended. The crime of failure to report is ongoing and continuous and punishable as a crime as long as the firearm or ammunition he constructively possessed remains unreported by him. 23 V.I.C. § 470.[5] In this case, neither Forbes nor Sonson made any effort

---

[5] This also applies to Sonson's argument that it is impossible to aid and abet a crime that is already committed.

to immediately report the ammunition to the Commissioner despite their individual constructive possession of the ammunition. Forbes pleaded guilty to Failure to Report and Aiding and Abetting. Sonson was charged with the identical crime. Because the ammunition was found in constructive possession of both Forbes and Sonson, the People used the aiding and abetting provision to hold both Forbes and Sonson responsible as principals for failing to report the ammunition. This avoids the issue of who owns the firearm or ammunition, while simultaneously holding them responsible for possession of the firearm or ammunition which both of them failed to immediately report to the Commissioner. Also, section 470 has absolutely nothing to do with responsibility for registering a firearm, which may presuppose ownership of the same firearm. Rather, the explicit language of section 470 addresses only reporting of the purchased or otherwise obtained firearm or ammunition. This reading is buttressed by the succinct heading or title of the statute, which states: "Report of firearms purchased outside or brought into the Virgin Islands . . . ." The unambiguous language of section 470 states that the person "shall report such fact in writing or in person to the Commissioner . . . ." To emphasize, the words register, registering, or any derivative form of these words are conspicuously absent from the statute or section 470.[6]

■■■ Therefore, we find no error in Sonson's conviction for failing to report the ammunition as a "constructive possessor" for which there is no statutory distinction between "constructive possession" and "actual possession" because both types of possession signifies that the ammunition was "otherwise obtained." If the legislature had intended a distinction between the two types of possession, it would have adroitly crafted and enacted legislation to reflect that purpose, but it did not.

---

[6] Licensing Provisions:

 23 V.I.C. § 454. Persons who may be licensed to carry firearms
 23 V.I.C. § 455. Application for license; form, oath; fees
 23 V.I.C. § 456. Qualifications of applicant
 23 V.I.C. § 456a. Persons ineligible to possess or carry firearms or ammunition
 23 V.I.C. § 457. Contents of license
 23 V.I.C. § 458. Grounds for refusing to issue license
 23 V.I.C. § 459. Cancellation of License

## B. The Superior Court did not plainly err in convicting Sonson under 14 V.I.C. § 2253.

Sonson argues that "[t]itle 14, section 2253 of the Virgin Islands Code is unconstitutional facially and as applied for it violate[s] the Second and Fourteenth Amendments to the Constitution of the United States and there is insufficient evidence to convict Sonson where it is impossible for a constructive possessor to be authorized by law under the statute." (Appellant's Br. 24.) Sonson presents this challenge through a series of underlying arguments. First, he argues that the statute convicts an individual who has no "actual" possession of a firearm. Second, Sonson argues that there is no provision for two persons to register one firearm and since Forbes pled guilty to failing to report, Sonson then could not register the same firearm. Third, he argues that without any claims to title it is impossible to complete the registration requirements set forth in 23 V.I.C. §§ 455-458. Lastly, Sonson concludes that 14 V.I.C § 2253's constructive possession provision unconstitutionally deprives him, as a constructive possessor, of the opportunity to register the firearm or to be "authorized by law" as required under the statute. Therefore, he argues that 14 V.I.C § 2253 runs afoul of the *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008), a United States Supreme Court decision outlawing statutes that prohibit gun possession.

The Second Amendment states that "[a] well-regulated militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II.[7] Sonson cites to the United States Supreme Court's opinions in *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) and *McDonald v. City of Chicago*, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010) in support of his assertion but his argument is misguided. Most importantly, Sonson failed to present this argument before the Superior Court and thus we must review for plain error. As discussed previously, plain error review requires that there 1) an error, 2) that is plain, 3) that affects substantial rights, and 4) if, in its discretion it finds that "the error seriously affects the fairness, integrity, or public reputation of [the] judicial proceedings." *Jackson-Flavius*, 57 V.I. at 721 (citing *Dobson*, 419 F.3d at 236).

---

[7] The Second Amendment to the Constitution is made applicable to the Virgin Islands by section 3 of the Revised Organic Act of 1954. 48 U.S.C. § 1561.

Sonson's argument that 14 V.I.C. §2253 is unconstitutional has been discussed by this Court in *Hightree v. Virgin Islands*, 55 V.I. 947 (V.I. 2011). Sonson presents no reason to alter our decision in that case. The facts remain the same that both *Heller* and *McDonald* only struck down statutes that placed complete bans on handgun possession. Both cases expressly authorized the regulation of handguns. *Heller*, 554 U.S. at 636; *McDonald*, 130 S. Ct. at 3047.

The District of Columbia's statute struck down in *Heller* restricted handgun possession by making it a crime to carry an unregistered firearm, by prohibiting the registration of handguns and by requiring residents to keep lawfully owned firearms in the home unloaded and disassembled or bound by a trigger lock or similar device. 554 U.S. at 574. In *Heller*, the Supreme Court ruled that the District of Columbia's firearm possession statute was unconstitutional and concluded that the Second Amendment makes it unconstitutional to prohibit one from owning a handgun for self-defense in the home, or to require that such weapons be left unloaded. *Id.* at 636. The firearm possession statute reviewed in *McDonald* was similar, but the City of Chicago argued that its laws were constitutional because the Second Amendment was not applicable to the States. 130 S. Ct. at 3026. However, the Supreme Court expressly rejected that claim in *McDonald*. The Court reaffirmed its ruling in *Heller* and declared the Chicago gun possession statute to be unconstitutional and further ruled that its decision in *Heller* is applicable to both the federal government and state government levels. *Id.* at 3050.

Importantly, the Supreme Court has also expressed that "[l]ike most rights, the right secured by the Second Amendment is not unlimited," and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 128 S. Ct. at 2816. Unlike the District of Columbia and Illinois municipal laws which expressly prohibited possessing certain types of firearms and which imposed other firearm restrictions, the Virgin Islands statute allows possession of a firearm as long as it is licensed with the Commissioner. As stated in *Hightree*,

> It would be patently unfair to the Superior Court, and to the workings of justice, to find that the trial court committed a plain error because the judge failed to *sua sponte* guess at the extension of Second Amendment jurisprudence to invalidate all firearms licensing re-

gimes, despite the important qualifying language from the United States Supreme Court to the contrary, and act upon that guess.

55 V.I. at 955. Given Sonson's failure to raise the issue of constitutionality of 14 V.I.C. § 2253 at trial, and any asserted error being neither clear nor plain under the current law, we decline to consider Sonson's Second Amendment claim.

## IV. CONCLUSION

For the foregoing reasons, we affirm the convictions and the October 30, 2009 Order and Judgment of the Superior Court.

HODGE, *Chief Justice*, concurring in part and dissenting in part. I join the majority in affirming Sonson's conviction for unauthorized possession of a firearm under section 2253 of title 14 of the Virgin Islands Code. Nevertheless, I write separately because I would find that the People failed to introduce sufficient evidence to sustain his conviction for failure to report ammunition pursuant to section 470(a) of title 23. Specifically, I do not believe that section 470 imposes a reporting requirement on one who only constructively possesses ammunition.

In construing title 23, section 470, this Court must first examine the plain language of the statute under the assumption that the Legislature's intent is manifested through the plain meaning of the words chosen. *Rohn v. People*, 57 V.I. 637, 643 (V.I. 2012); *Shoy v. People*, 55 V.I. 919, 926 (V.I. 2011). This Court should construe the statute sensibly and avoid interpretations which would yield absurd results. *Gilbert v. People*, 52 V.I. 350, 356 (V.I. 2009); *see also Gov't of the V.I. v. Berry*, 604 F.2d 221, 225, 16 V.I. 614 (3d Cir. 1979). Moreover, it is well established that "criminal statutes . . . are to be construed strictly," *Ward v. People*, 58 V.I. 277, 287 (V.I. 2013) (quoting *People v. Henley*, 1 V.I. 397, 398 (D.V.I. 1937)), and that any "ambiguity . . . should be resolved in favor of lenity [to the defendant]." *Rewis v. United States*, 401 U.S. 808, 812, 91 S. Ct. 1056, 28 L. Ed. 2d 493 (1971); *see also Gilbert*, 52 V.I. at 356.

Unlike section 2253 of title 14 — which specifically provides that "[t]he term 'possession' as used in this chapter means both actual and constructive possession," 14 V.I.C. § 2253(d)(4) — section 470 of title 23 imposes a reporting requirement only when one "purchases or otherwise obtains" a firearm or ammunition. I agree with the majority that the phrase

"purchases or otherwise obtains" is synonymous with possession, both due to the clear legislative history as well as the Legislature's instruction that "[w]ords and phrases shall be read with[in] their context and shall be construed according to the common and approved usage of the English language." 1 V.I.C. § 42. *See also United States v. McKie*, 112 F.3d 626, 630, 36 V.I. 367 (3d Cir. 1997) (interpreting section 470(a) as requiring one to make a report "upon possession").

The majority, however, concludes — without citing to any legal authority or performing any analysis — that section 470 encompasses both actual and constructive possession. On that point, I disagree. Many courts to have considered the question have held, when a criminal statute refers to possession without referencing actual or constructive possession, that only *actual* possession is contemplated. *See, e.g., State v. Garza*, 256 Neb. 752, 592 N.W.2d 485, 493-94 (1999) (rejecting argument that "possession" encompasses both actual and constructive possession because the common meaning of the word only refers to physical control); *People v. Garcia*, 197 Colo. 550, 595 P.2d 228, 231 (1979) (holding that "possession," when not defined in statute, refers solely to actual, physical possession); *Mack v. State*, 312 A.2d 319, 322 (Del. 1973) (same).[1] Moreover, the fact that our Legislature saw fit to explicitly define possession to include constructive possession for purposes of chapter 113 of title 14 further demonstrates that it did not intend for constructive possession to apply to section 470 of title 23.

Since I would conclude that section 470(a) clearly imposes a reporting requirement only for actual possessors, that should be the "end of the matter," and render any further analysis of the statute unnecessary. *Gilbert*, 52 V.I. at 356. Because the reporting requirements of section 470 of title 23 apply only to individuals who actively possess ammunition — rather than constructively possess it — and because there is no evidence

---

[1] I recognize that not all states agree that possession, without more, means only actual possession. *See Browder v. State*, 728 So.2d 1108, 1112 (Ala. 1997); *State v. Blanchard*, 776 So.2d 1165, 1170-71 (La. 2001) (noting that "possession" in its "usual sense[] includes constructive possession," though declining to decide that the statute punished the constructive possession of a firearm while in the possession of drugs, because to do so would produce absurd results); *State v. Peete*, 185 Wis. 2d 4, 517 N.W.2d 149, 152-53 (1994). However, I am persuaded by the analysis presented by the courts in the cases cited in the text, particularly in light of this Court's prior precedents holding that any ambiguity in a criminal statute must be resolved in favor of the defendant. *Gilbert*, 52 V.I. at 356.

that Sonson actually possessed any ammunition, I would reverse his conviction for violating section 470 of title 23.